■ STATE OF NEW YORK (STATE UNIVERSITY OF NEW YORK), Respondent, v GERRY MANGINELLI, Appellant, et al., Defendants.—In an action for an injunction, defendant Manginelli appeals, as limited by his brief, from so much of an order of the Supreme Court, Suffolk County, entered June 2, 1977, as, upon finding him guilty of contempt of court for violating a temporary restraining order, directed that he be imprisoned for 12 days. Order modified, on the facts, by reducing the period of incarceration to five days. As so modified, order affirmed insofar as appealed from, without costs or disbursements. Appellant's time to surrender himself to the Sheriff of

Suffolk County is extended until 20 days after service upon him of a copy of the order to be entered hereon, together with notice of entry thereof. In the light of all the circumstances, the length of the imprisonment was excessive to the extent indicated herein. Titone, J. P., Gulotta and Cohalan, JJ., concur; Shapiro, J., dissents and votes to reverse the order insofar as it has been appealed from and eliminate the period of imprisonment, with the following memorandum: The Special Term found appellant to be in civil contempt of court pursuant to section 753 of the Judiciary Law and punished him therefor by imposing a fine of $527 and ordering that he be incarcerated in the county jail for 12 days. I believe that the incarceration provision should be eliminated from the order. The following basic facts are not in dispute: a student demonstration was planned for February 23, 1977 at the State University of New York at Stony Brook to protest changes by the university in the scholastic calendar; the demonstration commenced at 2:00 P.M. on February 23, 1977 and portions of plaintiff's administration building were occupied by approximately 300 to 400 students; noise, disorder, littering and some vandalism, particularly in the president's suite, occurred during this demonstration; and at 5:00 P.M. the building was closed by the university, the rules of public order were read to the students and attempts were made to clear the building without success. At approximately 1:30 A.M. on February 24, 1977, an order to show cause was granted by Mr. Justice Bracken directing defendants to show cause why a preliminary injunction should not issue. The order to show cause contained a temporary restraining order and provided that service thereof and the supporting papers be by personal service or by reading the same through a megaphone or other amplification device or by posting. About 1:45 A.M. the rules of public order, together with the temporary restraining order, were again read over a "bullhorn" and explanations of the meaning of the temporary restraining order were given by plaintiff's executive vice-president and by plaintiff's attorney. Service was personally effected in accordance with the terms of the order to show cause on the appellant at about 1:50 A.M. on February 24, 1977. The building was not cleared of students until about 4:00 A.M. The temporary restraining order restrained "the Defendants and all other persons receiving notice of this injunction, whether acting individually or in concert * * * 1. From acting within or adjacent to any of plaintiff's academic or administrative buildings, dormitories, recreation rooms or athletic facilities or in any corridors, stairways, doorways and entrances thereto, in such unlawful manner as to disrupt or interfere with the lawful and normal operations of State University of New York at Stony Brook conducted by plaintiff in such places or to unlawfully block, hinder, impede or interfere with the lawful ingress to or lawful egress from any of such properties by plaintiff's faculty, administrators, students, employees or guests or otherwise disrupt educational functions or duly scheduled meetings that have received approvals for use of University facilities, of the said University; or to occupy any of said facilities outside of normal business hours: 2. From employing unlawful force or violence or the unlawful threat of force and violence, against persons or property". Appellant, testifying in his own behalf (none of the other defendants testified) stated that as president of the student government at the university, he was approached by students who were upset by the proposed changes in the academic calendar and that he planned the demonstration for February 23, 1977 since he felt it appropriate for students to voice their opinions. He stated that he was present from 2:00 P.M. to about 3:50 A.M.; that he was in the president's suite twice, once after the statement was read that the building was

officially closed; that he saw litter and minor damage; and that he prevailed upon the students in the suite to leave. He conceded that he was served with the order to show cause and temporary restraining order about 1:50 A.M. and that he understood it was a court order and that he could be held in contempt for violating it. He described the noise level from the students as high when university officials tried to speak, and testified that he had discussions with various university officials about what could happen to students who disobeyed the court order. He admitted that he told the assistant to the president that regardless of penalties, he would stay to the end of the demonstration, as he was responsible for getting the students out of the building. It is not disputed that the building was vacated by the students within two and one-quarter hours after the service of the order to show cause and plaintiff agrees that the appellant assisted in convincing the students to leave the building within that time span. In a memorandum concerning the demonstration, sent to the school's executive vice-president, the university's director of public safety stated: "At 3:51 a.m., through the efforts and assistance of Gerry Manginelli and Kevin Young, all demonstrators left the building and same was secured." Even without going into the question of whether, *as a matter of law,* the court's fixation of punishment was arrived at in violation of the provisions of section 753 of the Judiciary Law* because it took into consideration the conduct of the appellant *before* the order to show cause was served (and I believe it was), I am of the opinion that, under all of the circumstances of this case, where it is clear that shortly after the temporary restraining order was served on the appellant he urged his fellow students to evacuate the building and successfully perservered in that direction, the order that he be incarcerated constituted an abuse of discretion. It should be noted that none of the other defendants who were held in contempt was ordered to be incarcerated. Accordingly, I would eliminate the jail sentence imposed upon the appellant.

---

* Section 753 of the Judiciary Law states: "Power of courts to punish for civil contempts A. A court of record has power to punish, by fine and imprisonment, or either, a neglect or violation of duty, or other misconduct, by which a right or remedy of a party to a civil action or special proceeding, pending in the court may be defeated, impaired, impeded, or prejudiced, in any of the following cases: 1. * * * for disobedience to a lawful mandate of the court, or of a judge thereof, or of an officer authorized to perform the duties of such a judge." From the wording of the statute it is apparent that the appellant here could be punished only for disobedience of the temporary restraining order, since there was no "lawful mandate of the court" until that point.